RHODA VINSON *et al.*

*v.*

ARMINDIA SCOTT *et al.*

*Opinion filed October 25, 1902.*

1. EQUITY—*when bill to set aside deed is properly dismissed.* A bill to set aside a deed upon the ground of mental incapacity and undue influence is properly dismissed, where all the witnesses agree that while the grantor was old and physically weak when the deed was made, he understood the business in hand and was wholly uninfluenced by the grantee.

2. SAME—*when admission of improper evidence will not reverse.* The admission of improper evidence in a chancery case will not reverse if there is sufficient unobjectionable evidence in the record to sustain the decree.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

TIPTON & TIPTON, for appellants.

LEMON & LEMON, for appellees.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This is a bill in chancery by Rhoda Vinson and others, the children and grandchildren of William Cisco, deceased, filed in the circuit court of DeWitt county, to set aside a deed executed by said William Cisco and wife on the 19th day of July, 1895, conveying fifty-three acres of land to the appellee Armindia Scott. William Cisco died on the 6th of December, 1898. At the time he executed the deed he was eighty-six years of age, and the bill alleges that at that time he was not of sound mind and memory but was mentally incompetent to make said deed, and that Armindia Scott (the grantee) procured the making of the same by fraud, restraint and undue influence. The consideration for the making of the deed, as stated therein, was the services rendered and to be rendered to the grantor, but the bill alleges that there was no consideration for the same, and that Armindia Scott had rendered no services for the grantor; also, that if services were rendered by her to him they were trifling and had been amply paid for by the use of the lands, the grantee and her husband being tenants of the land at the time. The prayer is that the deed may be set aside.

An answer was filed by the grantee and her husband denying that there was no consideration for said deed, and averring that for more than five years prior to his death the grantee nursed and cared for the grantor, and that during the last years of his life he needed care and attention, and that in recognition of the services rendered, and to compensate her therefor, as well as for services she afterwards rendered to the time of his death, the said deed of conveyance was made to her. The an-

198—10

swer avers that the grantor was mentally competent to transact the business of making the deed, and did so without any fraud, restraint or undue influence on the part of the grantee.

At the same time the deed was made William Cisco also made a will, devising the same land to the grantee, Mrs. Scott. After his death proceedings were begun in the circuit court, one to set aside the will, and the other (this bill) to cancel the deed. An issue of fact having been made up, to be submitted to a jury, whether the will was in fact the will of the testator, it was agreed by counsel that this cause should be heard by the chancellor upon the same evidence offered before the jury in the will case. Upon the evidence so heard the issues were found for the defendants upon the bill to set aside the deed, and the same was dismissed. Complainants below prosecute this appeal to reverse that decree.

The question presented for our consideration is largely one of fact, viz., had the grantor, at the time he executed the instrument in question, sufficient mental capacity to understand and comprehend the nature of the act?— in other words, to transact the ordinary business affairs of life.

It appears that for several years before his death, and at the time he made the deed sought to be set aside, William Cisco was in feeble health, and that his eyesight and hearing were considerably impaired. A number of the witnesses for complainants testify that at the time the deed was made, in their opinion his mind was not right, and that he appeared to be unable to do any kind of business, and at least one of these witnesses testified, on cross-examination, that he never saw Mr. Cisco do an insane act and that he did not talk irrationally. Another of them also stated, on cross-examination, that he did not know that he noticed anything peculiar about the grantor more than any other old man. On the other hand, numerous witnesses for the defendants stated that

from what they saw of him they believed he was "all right mentally;" that they considered his faculties good for a man of his age.

Dr. Bates testified that he knew Mr. Cisco from 1892 to 1899, and as a physician treated him during January, February and April, 1892, and some in 1895. He says: "After 1895 it was necessary to use a catheter. I made an examination as to his mental condition on April 1, 3 and 19, 1895. I found his mental condition good,—far superior to men, in general, of his age,—and considered him capable of transacting ordinary business. There never was a time, in my opinion, after 1892, that he was not of sufficient mental capacity to know and understand any and all business transactions pertaining to a disposition of his property by will, deed or otherwise. He knew how much real estate he owned; when purchased; from whom purchased; how long he had owned the same, and the disposition he wished to make of the same. He had no insane delusion."

Mr. A. J. Richey testified: "I live at Clinton. I am seventy-two years old and justice of the peace. I knew William Cisco. I have seen the paper purporting to be a will before. I suppose it was on the 19th of July, 1895. Cisco signed by making his mark. I read the paper over to him. He said that was the way he wanted it. He said he had made up his mind to make a will. I didn't see anything that would lead me to believe he was anything but a sane man. Mr. and Mrs. Scott were not in the room at the time the will was read. The witnesses were there." On cross-examination he said: "I read both the deed and the will over to Mr. Cisco. I read it about like I am talking now. * * * I didn't think anything about the old man's condition at the time. * * * He signed it and said it was all right. I read it over in an ordinary tone of voice."

Mr. Richard Burton, one of the witnesses to the signature on the deed, testified: "I was present when Louis N. Richey was present and some papers were signed. It

was about the 19th of July, 1895. I signed a will and a deed there, at Mr. Cisco's request. * * * Mr. Cisco touched the pen while Squire Richey guided it. From my knowledge of Mr. Cisco before and after, and at the time of the signing of the will and deed, it is my opinion his mental condition was good. * * * Old Mr. Cisco was unable to perform labor or business requiring physical strength. Physically, I considered him unable to transact business requiring physical exertion. * * * After the will was read to Mr. Cisco he said it was all right."

The other witness to the will, Mr. L. N. Richey, says: "I saw the old gentleman and heard him talk. There was nothing that I could observe that especially attracted my attention to his mental condition. The business was transacted. Everything seemed to be satisfactory. There was no argument or discussion about the matter, and everything seemed to be understood." On cross-examination he says: "What I said about not having any belief about the old man's mental capacity was, that I didn't notice anything wrong with him in that respect."

Edward Novvell, who took the acknowledgment to the deed, says: "I was acquainted with Cisco. I had known him since 1856. We talked over the business matter of the deed. He talked rational about the matter. I thought he was perfectly rational. In my opinion he was capable of transacting such business. I thought he was a well preserved man so far as his mental faculties were concerned,—especially so for a man of his age. * * * Old Mr. Cisco said he was getting feeble and wanted to arrange his business affairs."

The evidence justified the chancellor in finding the issues in favor of the defendants. Taken as a whole, it clearly establishes the grantor's mental capacity to make the deed, and that he acted without restraint or undue influence.

There is nothing in this case to call for the distinction between the capacity to make a deed and execute

a will, insisted upon by counsel for appellants as being recognized in *Ring* v. *Lawless*, 190 Ill. 520. Here the deed was in the nature of a voluntary conveyance, and the evidence wholly fails to show that the grantee, or any person on her behalf, requested or in any way influenced the grantor to make the same. It is noticeable that all of the witnesses who testify to the mental condition of the grantor at the particular time the deed was made, agree that he understood the business in hand and was wholly uninfluenced by the grantee or any other person. Moreover, "the rule in chancery cases, where the evidence is conflicting and heard in open court, is, that error in findings of fact should be clear and palpable before the decree below should be reversed." (*Elmstedt* v. *Nicholson*, 186 Ill. 580, and cases there cited.) In this case, however, we are of the opinion that under the evidence it would have been manifest error for the chancellor to have found in favor of the appellants.

Upon the hearing the court admitted in evidence the record of certain proceedings in the county court of DeWitt county against William Cisco, wherein it was attempted to have a conservator appointed for him, but which attempt failed. It is said the admission of this evidence was error. Conceding that the testimony should have been excluded as having no proper bearing upon the issues to be decided by the chancellor, this court will presume that in arriving at his decision he considered only competent testimony, and it appearing that there is unobjectionable testimony amply sufficient to sustain the decree below it will not be disturbed. *Coffey* v. *Coffey*, 179 Ill. 283, and cases cited.

The decree below dismissing the bill will accordingly be affirmed.    *Decree affirmed.*